FILED
SUPERIOR COURT
OF GUAM

2018 MAR 23 PM 4: 18

CLERK OF COURT

By:_____



## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| IN THE MATTER OF THE APPLICATION<br><br>of<br><br>THOMAS V.C. TANAKA and LANDTECH CORPORATION, a Guam Corporation, for the registration of title to Lot No. 475, Y-Pigo, Municipality of Agat, Guam,<br><br>Petitioners. | LAND REGISTRATION<br>CASE NO. LR0004-13<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW** |

### INTRODUCTION

This matter came before the Honorable Vernon P. Perez on September 8 and 11, 2017, for trial on Petitioners Thomas V.C. Tanaka and Landtech Corporation ("Petitioners") Petition for Registration of Title of Land. Petitioners were represented by Peter F. Perez, Esq., and the Government of Guam, appearing in opposition to the registration of title, was represented by the Office of the Attorney General of Guam, through Assistant Attorney General Nicholas E. Toft. Having considered the evidence presented, oral and written arguments, and legal authorities presented by both parties, the Court hereby issues the following findings of fact and conclusions of law.

### FINDINGS OF FACT

By a preponderance of evidence, the Court makes the following findings of fact:

1. On August 13, 2013, Petitioners filed a Petition to register the following property:

    Lot No. 475 Y-Pigo Municipality of Agat, Guam, containing an area of 95,958 +/- square meters, as said lot is marked and designated on Drawing

*In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation*
Case No. LR0004-13
Findings of Fact and Conclusions of Law

Page 1 of 9

No. FC 12-1201, L.M. No. 064-FY2013, as described in Land Registration Survey Map, which is attached hereto and recorded at the Department of Land Management under Instrument No. 853469.

2. The Petition states that the Petitioners and their predecessors in interest have been in the actual, exclusive, and adverse possession of the land for more than five years continuously, and have paid all taxes.

3. On November 29, 2013, the Government of Guam filed a Statement of Objections to Petition for Land Registration.

**History of Lot 475**

4. On September 13, 1902, Antonio Tarlaje y Cruz[1] acquired Estate No. 294, containing an area of one are and ninety-two centares (192 sq. m.) located on Legaspi Street in the town of Agat. (Pet. Ex. 6).

5. On September 13, 1902, Antonio Tarlaje y Cruz also acquired Estate No. 295, containing an area of two hectares, located in Pigo in the jurisdiction of Agat. *Id.*

6. On June 9, 1923, Robustiano Blanco Terlaje and Vincente Blanco Terlaje, descendants of Antonio Tarlaje y Cruz, executed a Quitclaim Deed on Estates No. 294 and 295 in favor of Joaquin Blanco Terlaje. (Pet. Ex. 7; 8).

7. On February 26, 1952, the U.S. Government conveyed to the Government of Guam title to lands that were placed under the administrative supervision of the Secretary of the Interior by Executive Order No. 10178, dated October 30, 1950. (Pet. Ex. 4). This included land designated as Land Square 30, Section 2, Land Units b, c, d, e, f, g, h, m, n, o, p, q, r, w, x, y. *Id.* Land Square 30, Section 2 included the entirety of the land at issue, Lot 475.

8. On March 20, 1970, Joaquin Blanco Terlaje executed a Deed of Gift to Julia F. Baza and Maria Borja Terlaje, transferring 1.0 hectares (10,000 sq. m.) of land in the place of Pigo, Agat. (Pet. Ex. 15).

---

[1] This spelling reflects what is written in Petitioner's Exhibit 6.

*In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation*
Case No. LR0004-13
Findings of Fact and Conclusions of Law

9. On May 14, 1975, Maria Borja Terlaje and Julia F. Baza executed a Deed of Gift to John A. Terlaje and Julia F. Baza, transferring property described as Pigo, Agat Suburban, containing an area of one hectare. (Pet. Ex. 16).

10. On June 6, 1988, Julia R. Baza and John A. Terlaje gave a Power of Attorney (Doc. No. 399243) to Pete U. Baza for Estate No. 294, Pigo Municipality of Agat. (Gov't Ex. D).

11. On July 25, 1988, Thomas T. Anderson prepared a land registration survey map of Lot 475 for Pete Baza as the Power of Attorney for Julia R. Baza and John A. Terlaje. The map describes Lot 475 as Estate 294, situated in Pigo, Municipality of Agat, Land Square 30, Section 2, consisting of an area of 95,851 sq. m. (Pet. Ex. 14).

12. On September 22, 1988, Pete U. Baza, under the Power of Attorney document number 399243, signed a Quitclaim Deed granting Lot 475-R7, Agat, Guam, containing 3 hectares of land, to Thomas T. Anderson. (Pet. Ex. 9).

13. On September 23, 1988, Thomas T. Anderson signed a Quitclaim Deed conveying Lot 475-R7, Municipality of Agat, containing 3 hectares of land, to Thomas V.C. Tanaka. (Pet. Ex. 10).

14. On September 28, 1988, Pete U. Baza, under the Power of Attorney Document No. 399243, signed a Quitclaim Deed granting Lot 475, Agat, Guam, containing an area of 95,851 sq. m. to Unitak Corporation. (Pet. Ex. 11). The sketch attached to the Quitclaim Deed describes Lot 475 as Estate 294. *Id.,* Ex. A.

15. On November 12, 2010, Unitak Corporation, by and through its president Thomas T. Anderson, signed a Quitclaim Deed granting Lot 475 (containing an area of 95,851 sq. m.) to Thomas T. Anderson. (Pet. Ex. 12)

16. On March 6, 2012, Thomas T. Anderson signed a Quitclaim Deed granting Lot 475 (containing 95,851 sq. m.) to Landtech Corporation. (Pet. Ex. 13).

17. On February 22, 2013, Frank L.G. Castro ("Mr. Castro") prepared a land registration survey map for Thomas V.C. Tanaka and Landtech Corporation of Lot 475. The

*In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation*
Case No. LR0004-13
Findings of Fact and Conclusions of Law

Page 3 of 9

map describes Lot 475 as Estate 295. (Pet. Ex. 2). The land registration survey map was approved by the Department of Land Management, and recorded as Instrument No. 853467 on April 28, 2013. *Id.*

18. The Government's Exhibit C, Document No. 5624, is a Retracement and Parcelling Map that shows Legasi St., the location of Estate No. 294, to be near the intersection of Route 2 and Route 12, and not near the location of Lot 475. (Gov't Ex. C).

19. Katrina Hodges, head of the Real Property Tax Division of the Department of Revenue and Taxation, testified that Thomas T. Anderson is the current president of Landtech Corporation and that the map submitted with the current Land Registration Petition was commissioned by Landtech's president, Thomas T. Anderson.

20. Ms. Hodges testified that Landtech's business license expired in June 2016 and has not been renewed.

21. Ms. Hodges confirmed that the records of Department of Revenue and Taxation confirmed that all real property taxes for Lot 475 have been paid. *See* Plt. Ex. 1. The Certification of Real Property Tax Payment for Lot 475 (land area of 95,851 sq. m.) issued September 7, 2017, indicates that real property taxes were paid on the lot owned by John A. Terlaje and Julie T. Baza from 1970 to 1988, that real property taxes were paid on the lot owned by Unitek Corporation from 1989 to 2010, and that real property taxes were paid on the lot owned by Thomas T. Anderson from 2011 to 2016. *Id.*

22. Ms. Hodges testified that the land area for real property tax is determined by the recording map sent to Department of Revenue and Taxation from the Department of Land Management.

23. Ms. Hodges acknowledged that there was a jump in the tax amount from 1988 to 1989. She testified that there was a re-evaluation done in 1987 that was effectuated in 1988. Ms. Hodges testified that the Department of Revenue and Taxation does not have information as to who paid the taxes, only that they were paid.

*In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation*
Case No. LR0004-13
Findings of Fact and Conclusions of Law

Page 4 of 9

24. Mr. Castro is licensed to practice as a land surveyor in Guam, and has been working in the field of land surveying on Guam for sixty-eight (68) years.

25. Mr. Castro testified that based on his experience, it is not uncommon for the area of un-surveyed lots, in particular those lots created prior to World War II, to vary in size once the lot is actually surveyed.

26. Mr. Castro testified that he did not research the title of Lot 475 prior to 1988 in preparing his map, and relied entirely on the borders of other maps to determine Lot 475's boundaries.

27. Mr. Castro testified that he initially spoke with the petitioners to ascertain their basis for their claim to ownership of Lot 475, and looked at records that were available regarding the property.

28. Mr. Castro testified that he went to the site to supervise his survey crew, who were able to locate and measure all point and markers for the property except for the southeastern corner of the property because it was inaccessible.

29. Mr. Castro testified that he used information from his preparation of the land registration survey map for the adjoining lot to confirm the location of the southern boundary of Lot 475.

30. Mr. Castro testified that it is not unusual for un-surveyed lots created prior to World War II to vary in size once the lot is actually surveyed. Mr. Castro testified that the size may become bigger than what was originally recorded, and that it may also become smaller because other surrounding lots had been surveyed prior.

31. Mr. Castro testified that there were no fences, signs, or other physical indications on Lot 475 to indicate adverse possession or ownership by Landtech Corporation or Thomas V.C. Tanaka.

32. Paul Santos testified that he has been working as the chief surveyor for the Department of Land Management for the past ten years. Mr. Santos testified that he reviewed and approved the map prepared the land registration survey map prepared by Mr. Castro in 2013.

*In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation*
Case No. LR0004-13
Findings of Fact and Conclusions of Law

Page 5 of 9

33. Mr. Santos testified that as far as he was aware, there was only one other map besides Mr. Castro's that was prepared and registered at the Department of Land Registration.

34. Mr. Santos testified that in his review of the property and its boundaries, he did not discover any maps drawn of the property in record prior to World War II.

35. Mr. Santos testified that he was not aware of any reason to doubt the integrity of Mr. Castro's surveys.

36. Thomas V.C. Tanaka testified that his ownership consists of 30,000 sq. m. and that he acquired the land in 1988.

37. Jenna Sablan, a representative from Title Guaranty of Guam, Inc., testified that there was no clear chain of title to Lot 475 and no basis for Petitioners' claim.

38. The maps prepared for Lot 475 state that "Certifications as signed by the Guam Chief Surveyor and Guam Chief Planner definitely do not constitute a recognition by the Government of Guam of ownership extent and area of land surveyed and claimed."

39. Andrew Santos, the Deputy Civil Registrar for Department of Land Management, confirmed that only two maps for Lot 475 have been recorded: the map prepared by Mr. Castro in 2013 (Pet. Ex. 2) and a map recorded in 1988 (Pet. Ex. 14).

40. The Government has never surveyed Lot 475.

41. On November 7, 1990, Thomas T. Anderson plead guilty to three counts of Attempted Theft (As a Second Degree Felony) in CR90-00107 in the District Court of Guam. All counts described incidents where Thomas T. Anderson, between the dates of April 25, 1988 and May of 1989, prepared quitclaim deeds and survey maps describing small private parcels of land as exponentially larger than they were and included property owned by the Government of Guam, with the intention of transferring large amounts of government land to himself and others.

42. In *People v. Gill*, 61 F.3d 688 (9th Cir. 1995), Mr. Anderson testified at trial that he was involved in a conspiracy to gain title to Government of Guam land by obtaining

*In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation*
Case No. LR0004-13
Findings of Fact and Conclusions of Law

Page **6** of **9**

Land Management approval of survey maps that were deliberately drawn to encompass government land. Mr. Anderson was able to secure Land Management approval of the bogus maps because of his "good contacts" within the agencies. In some instances, Mr. Anderson was also able to procure phony tax assessment records for the "new" land.

43. Neither Mr. Santos or Mr. Castro could specifically identify where "Pigo" or "Y-Pigo" existed. The only connection between "Pigo" or "Y-Pigo" and Lot 475 is the 1988 map prepared by Mr. Anderson.

## CONCLUSIONS OF LAW

1. Under Guam law:

> Any person engaging in, transacting, conducting, continuing, doing, or carrying on a business on Guam without a business license and, as may be required by all applicable laws of Guam, a certificate of authority form the Director of the Department of Revenue and Taxation, or other applicable regulating agency or board, may not maintain a proceeding in any Court on Guam until it obtains a business license and, as may be required by all applicable laws of Guam, a certificate of authority to transact business on Guam.

11 G.C.A. § 70131(b).

2. Ms. Hodges testified that Petitioner Landtech Corporation did not have a valid business license at the time of trial. Therefore, pursuant to section 70131(b), Petitioner Landtech Corporation is not entitled to maintain the instant action.

3. The action may proceed, however, as to Petitioner Thomas V.C. Tanaka.

4. The applicant for registration of title of land has the burden of proof and must establish ownership by a preponderance of evidence. *See Tenorio v. Government of Guam*, 527 F.2d 1095, 1096 (9th Cir. 1974).

5. Although Petitioners' presented real property tax certification indicating that property taxes have been paid for Lot 475 for more than the past ten years, the Court is concerned that Landtech Corporation's president Thomas T. Anderson has a well-documented history of procuring phony tax records through his contacts at the

*In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation*
Case No. LR0004-13
Findings of Fact and Conclusions of Law

Page 7 of 9

Department of Land Management. Additionally, Mr. Anderson plead guilty to preparing quitclaim deeds and survey maps describing parcels of land as exponentially larger than they were and including property owned by the Government of Guam between April 1988 and May 1989. The first map on record at Land Management for Lot 475 was prepared by Mr. Anderson in 1988.

6. Although payment of taxes is evidence of open and notorious possession for the purposes of adverse possession, "acceptance of taxes does not estop the government from denying title in the person who pays them." *Yamashita v. People of Territory of Guam*, 54 F.3d 114, 117 (9th Cir. 1995). *See also* 21 G.C.A. § 29106 (proof of payment of taxes is necessary for adverse possession but not sufficient to establish a right to registration). Further, government land cannot be acquired by adverse possession. *See Yamashita*, 527 F.2d at 1096.

7. The Court further finds that Petitioners have no claim to Estate 295. The power of attorney given to Pete U. Baza was strictly limited to Estate 294, and he did not have legal authority to unilaterally expand that authority to Estate 295. Even if Estate 295 were considered to be the property of Petitioners, it would not provide a basis for registration of Lot 475, which is a much larger parcel of land by several magnitudes. Estate 295 consists of an area of 2 hectares, whereas Lot 475 consists of an area of 9.5 hectares. *See* Pet. Ex. 6; Ex. 14.

8. Therefore, based on the evidence presented at trial, the Court finds that Petitioners have failed to meet their burden in establishing clear title to the land sought to be registered. They have not been in actual, exclusive or adverse possession of the land described in the petition, nor have they submitted an abstract of title that shows ownership of the lot.[2]

//

//

_____

[2] If any of the foregoing facts constitute conclusions of law, they are adopted as such; and if any of the foregoing conclusions of law constitute findings of fact, they are adopted as such.

*In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation*
Case No. LR0004-13
Findings of Fact and Conclusions of Law

Page **8** of **9**

## CONCLUSION

For the foregoing reasons, the Court hereby finds that Petitioners have failed to meet their burden in establishing clear title to the land sought to be registered, and DENIES the Petition for Land Registration at this time.

**IT IS SO ORDERED** this 23rd day of March, 2018.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam

**SERVICE VIA COURT BOX**
I acknowledge that a copy of the original hereto was placed in the court box of:

Peter F. Perez;
AG's Office

Date: 3-23-18  Time: 4:20pm

_____
Deputy Clerk, Superior Court of Guam

_In the Matter of the Application of Thomas V.C. Tanaka and Landtech Corporation_
Case No. LR0004-13
Findings of Fact and Conclusions of Law